Erlinda K. ILUSORIO, Plaintiff,

v.

Erlinda ILUSORIO–BILDNER and
Albert Bildner, Defendants.

No. 99 CIV. 4239(VM).

United States District Court,
S.D. New York.

May 18, 2000.

Jack F. Scherer, New York City, for Plaintiff.

## DECISION AND ORDER

MARRERO, District Judge.

Plaintiff Erlinda K. Ilusorio, a citizen and life-long resident of the Philippines, brings this action against Erlinda Ilusorio–Bildner ("Mrs.Bildner"), her daughter, and Albert Bildner ("Mr.Bildner"), her son-in-law, for misappropriation and libel. Defendants have moved for dismissal of all claims on the ground of forum non conveniens, arguing that the more convenient place for this litigation is the Philippines. Alternatively, defendants seek dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the ground that plaintiff has failed to state a claim upon which relief can be granted. For the reasons set forth below, the Court conditionally grants the motion based on forum non conveniens and, therefore, declines to address the alternative portion of the motion.

### *FACTS*

Plaintiff's complaint alleges four causes of action: two claims for misappropriation against Mrs. Bildner and two claims for libel, one against each of the defendants. Defendant Erlinda Ilusorio–Bildner has relocated to and presently resides in the Philippines, while her husband, defendant Albert Bildner, lives in New York and, according to representations made at oral argument, does not plan to relocate to the Philippines. *See* District Court Transcript, dated Feb. 9, 2000 ("Tr."), at 11.

The misappropriation claims in this case focus on the ownership of approximately $3.5 million (the "Funds") sent by wire transfers from certain Philippine banks to Mrs. Bildner in New York between September 1996 and May 1997 and whether the Funds belonged to or were beneficially owned by plaintiff or by Potenciano Ilusorio, plaintiff's former husband and Mrs. Bildner's eighty-seven year old father who resides in the Philippines. Plaintiff claims that the Funds were part of her estate; that they were wired pursuant to an agreement she had with Mrs. Bildner; and that Mrs. Bildner breached the agreement. Mrs. Bildner does not dispute that she received the Funds, but claims that the Funds belonged to her father; that she treated them as belonging to her father; and that, in her capacity as her father's authorized agent, she managed and used the Funds in accordance with his wishes.

Plaintiff's libel claims are based on two letters written by Mr. Bildner in New York which were published only in the Philippines. On March 3, 1999, Mr. Bildner wrote and sent one letter addressed to the Chairperson and eleven members of the Board of Trustees at Philippine Women's University (the "Board") regarding the Board's decision to honor plaintiff. On March 11, 1999, Mr. Bildner wrote and sent a letter addressed to the Chairperson and four other officers and directors of the Philippine National Centennial Commission regarding that organization's decision to honor plaintiff and also enclosed a copy of his March 3, 1999 letter to the Board. In addition, Mr. Bildner sent copies of these letters to plaintiff's brothers. Within two weeks after Mr. Bildner dispatched his second letter, plaintiff commenced a lawsuit for libel in the Philippines against Mr. and Mrs. Bildner based on both letters.[1] On or about May 26, 1999, Mr. Bildner moved to dismiss the Philippine libel action for lack of personal jurisdiction. Plaintiff commenced the instant action, the libel claims of which are based on the same facts as plaintiff's Philippine libel action, on or about June 14, 1999.

### *DISCUSSION*

The doctrine of forum non conveniens has been firmly established since the Supreme Court's decision enunciated by Justice Jackson in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). A forum non conveniens determi-

---

1. The Court understands that plaintiff's affidavit in the Philippine libel action was "executed to initiate criminal and civil cases for LIBEL." Patajo–Kapunan Decl., Ex. B., ¶ 12.

nation is fact intensive and one committed to the sound and broad discretion of the Court. The forum non conveniens analysis proceeds in two steps. The Court must initially determine whether there is an adequate alternative forum. *Id.* at 506–07, 67 S.Ct. 839. If such a forum exists, the Court must then select the most convenient forum by balancing all relevant private and public interest factors. *Id.* at 508–09, 67 S.Ct. 839.

**(1) Adequate Alternative Forum**

■ To start, the Court must ascertain if an adequate alternative forum exists. *Id.* at 506–07, 67 S.Ct. 839. An alternative forum is adequate if defendants are amenable to service of process there and the forum permits litigation of the subject matter of the dispute. *See Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 254, n. 22, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981), *reh'g denied,* 455 U.S. 928, 102 S.Ct. 1296, 71 L.Ed.2d 474 (1982). As an initial matter, the Court notes that several courts in this Circuit, in forum non conveniens rulings, have concluded that the Philippines is an adequate alternative forum. *See, e.g., Del Fierro v. Pepsico Int'l,* 897 F.Supp. 59 (E.D.N.Y.1995); *Transunion Corp. v. Pepsico, Inc.,* 640 F.Supp. 1211 (S.D.N.Y. 1986), *aff'd,* 811 F.2d 127 (2d Cir.1987); *Cruz v. Maritime Co. of Philippines,* 549 F.Supp. 285 (S.D.N.Y.1982), *aff'd,* 702 F.2d 47 (2d Cir.1983).

■ Here, the adequacy of the Philippines seems to be clear from plaintiff's own conduct; she has commenced four lawsuits in the Philippines against one or both of the defendants who are before this Court, all of which remain pending. *See* Declaration of Lorna Patajo–Kapunan, sworn to Nov. 10, 1999 ("Patajo–Kapunan Decl."), ¶ 5; Defendants' Memorandum of Law in Support of Motion to Dismiss ("Defendants' Memo") at 1. In addition, there are "36 total lawsuits" pending in the Phil-

ippines that derive from financial disputes among members of the Ilusorio family, including Mrs. Bildner, her parents and her siblings. *See* Supplemental Declaration of Lorna Patajo–Kapunan, sworn to Jan. 18, 2000 ("Patajo–Kapunan Supp. Decl."), ¶ 3.[2]

Second, plaintiff may litigate the subject matter of her claims in the Philippines because Philippine law recognizes separate civil claims for libel and misappropriation. *See* Patajo–Kapunan Decl., ¶¶ 9, 11. Indeed, plaintiff has admitted that one of the four pending Philippine actions between the parties involved here in New York is a libel action "against defendants based upon the letters written by Bildner." Declaration of Manuel R. Singson, sworn to Dec. 17, 1999 ("Singson Decl."), ¶ 4; Patajo–Kapunan Decl., ¶¶ 5–6, Ex. B. The Court further understands, based on representations at oral argument, that defendants are suing plaintiff in the Philippines for acts of misappropriation related to those at issue here, and concludes that plaintiff may be able to file the misappropriation claims in her New York complaint as a counterclaim in the Philippine action. *See* Tr. at 4, 14. Furthermore, the Court finds that the remedies afforded by Philippine courts—damages, attorney's fees and costs—address the subject matter of plaintiff's four claims in an adequate and satisfactory manner. *See* Patajo–Kapunan Decl., ¶¶ 10, 12; Singson Decl., ¶ 7.

Regarding service and jurisdiction, plaintiff has conceded, both explicitly and implicitly, that the Philippines is an adequate alternative for her action as to Mrs. Bildner. *See* Tr. at 27; Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss ("Plaintiff's Opposition Memo") at 4–5. To this end, the Court observes that three of the four causes of action set forth in the complaint here are against Mrs. Bildner and that Mrs. Bildner does not challenge jurisdiction in the Philippines. *See* Tr. at 9–10, 23.

**2.** The Court notes that twenty-eight of the thirty-six lawsuits appear to have been filed in the past year. *See* Patajo–Kapunan Decl., ¶ 4.

With respect to Mr. Bildner, plaintiff's sole argument is that the Philippines may be inadequate because of Mr. Bildner's challenge to jurisdiction in the pending Philippine libel action brought by plaintiff. *See* Tr. at 27; Plaintiff's Opposition Memo at 4–5. In fact, plaintiff has informed this Court on more than one occasion that "[i]f Mr. Bildner consents to the jurisdiction of the Philippines, the libel portion of our claim [the only claim in the complaint herein against Mr. Bildner] properly belongs in the Philippines." Tr. at 28; *see* Tr. at 27, 41, 57. While it appears that Mr. Bildner may be amendable to service in the Philippines (*see* Patajo–Kapunan Decl., Ex. B),[3] defendants have advised that "Mr. Bildner would not subject himself to the jurisdiction of the Philippine courts at the present time" (Tr. at 11),[4] while simultaneously arguing that "Mr. Bildner does not want this case to be tried in New York" and that "[h]is main concern is that this case not proceed in New York because it is not the appropriate forum." Tr. at 25. The Court finds defendants' position to be inconsistent at best (*see* Tr. at 23), and since the Philippines is an otherwise adequate alternative forum, dismissal of this action is dependent on the consent of Mr. and Mrs. Bildner to service of process and personal jurisdiction in the Philippines in accordance with the conditions set forth in this Decision. *See* discussion, *infra.*

## (2) The *Gilbert* Factors

Having identified the Philippines as an adequate alternative forum, the Court must next balance the relevant private and public interest factors to determine which forum "will be most convenient and will best serve the ends of justice." *Peregrine Myanmar Ltd. v. Segal,* 89 F.3d 41, 46 (2d Cir.1996).

■ As a preliminary matter, the Court notes that there is generally a strong presumption in favor of a plaintiff's choice of forum. *See Piper Aircraft Co.,* 454 U.S. at 255–56, 102 S.Ct. 252. Defendants, therefore, ordinarily have the burden of overcoming this presumption by proving that "the balance of convenience tilts strongly in favor of trial in the foreign forum." *R. Maganlal & Co. v. M.G. Chem. Co., Inc.,* 942 F.2d 164, 167 (2d Cir.1991). This presumption, however, carries less force and is entitled to less deference in a case commenced by a foreign plaintiff. *See Piper Aircraft Co.,* 454 U.S. at 256, 102 S.Ct. 252; *Capital Currency Exch., N.V. v. National Westminster Bank PLC,* 155 F.3d 603, 612 (2d Cir.1998), *cert. denied,* 526 U.S. 1067, 119 S.Ct. 1459, 143 L.Ed.2d 545 (1999); *Murray v. British Broad. Corp.,* 81 F.3d 287, 290 (2d Cir.1996). As recognized previously, plaintiff is a citizen and life-long resident of the Philippines who has advanced three causes of action against her daughter, another resident of the Philippines (*see* Tr. at 9), and one cause of action against her son-in-law based on a set of facts which, plaintiff admits, has the Philippines at its heart. *See* Tr. at 27–28, 41.

### (A) The Private Interest Factors

■ The private interests of the litigants to be considered by the Court in-

**3.** While the Court notes that an August 19, 1999 recommendation of a Manila city prosecutor determined, among other things, that a Philippine court had personal jurisdiction over Mr. Bildner (*see* Supplemental Declaration of Manuel R. Singson, sworn to Jan. 29, 2000 ("Singson Supp. Decl."), ¶ 8, Ex. 3; Tr. at 20, 22) and that Mr. Bildner could be criminally prosecuted for libel, the Court does not place any weight in the recommendation because there is another recommendation of even date from the same prosecutor finding that Mr. Bildner could not be criminally pros-

ecuted for any libel. *See* Singson Supp. Decl., ¶ 7, Ex. 2; Tr. at 21–22.

**4.** The Court points out that defendants in many cases involving a request for dismissal based on forum non conveniens consent to something such as jurisdiction in the new forum, a waiver of the statute of limitations, or the use of certain discovery in the new forum. Defendants in this case, however, as they argue vigorously for transfer, have not offered to consent to anything.

clude: (1) the ease of access to evidence; (2) the availability of compulsory process; (3) the cost for cooperative witnesses to attend trial; (4) the enforceability of a judgment; and (5) other practical matters that might shorten any trial or make it less expensive. *See Gilbert*, 330 U.S. at 508, 67 S.Ct. 839. The Court finds that these private interest considerations weigh strongly in favor of dismissal of this action.

The sources of proof relevant to this matter—documents and witnesses—are located overwhelmingly in the Philippines. Defendants have argued that the documents relevant to determining the ownership of the Funds and to understanding the reason for the transfers to Mrs. Bildner are in the Philippines (*see* Tr. at 12, 16, 18) and that voluminous records relating to Potenciano Ilusorio's holdings in the Philippines must be reviewed including, but not limited to, board resolutions and financial records of Philippine corporations; records from accounts at one or more Philippine banks; and a power of attorney executed in the Philippines. *See* Defendants' Memo at 2, 10–11. More specifically, defendants have claimed that the books and records of four Philippine corporations (Great Asia Enterprises, Inc.; Eurco Development Corporation; Lakeridge Development Corporation; and Fidelity Farms, Inc.) will indicate that the Boards of Directors of these corporations passed resolutions authorizing the transfers and appointing Mrs. Bildner as the corporations' representative in disbursing the Funds. *See* Patajo–Kapunan Supp. Decl., ¶ 5; Tr. at 15.

Defendants have further suggested that the documents needed to prove the truth of the statements set forth in Mr. Bildner's two letters are in the Philippines. *See* Defendants' Memo at 11. Finally, Mr. and Mrs. Bildner have argued that many of the documents relevant to the libel and misappropriation claims will have been offered in

the other pending Philippine lawsuits involving the very parties before the Court. *Id.* at 7. In contrast, plaintiff not only admits that many relevant documents are in defendants' possession and/or in the control of Mrs. Bildner's father in the Philippines (*see* Plaintiff's Opposition Memo at 7), but her counsel has conceded that he is unaware of any documents related to the purported agreement between plaintiff and Mrs. Bildner or to instructions concerning the purchase of real property in New York. Tr. at 33, 35.

The Court further finds that virtually all of the essential witnesses are in the Philippines. The three material witnesses in connection with the misappropriation claims who may have first-hand knowledge regarding ownership of the Funds would seem to be plaintiff who claims she owned the Funds; Potenciano Ilusorio, who Mrs. Bildner claims owned the Funds; and Mrs. Bildner who admits receiving and using the Funds. Plaintiff's counsel has conceded that "[t]he witnesses would be the mother and the daughter as to what transpired." Tr. at 33. Defendants have disclosed that the father Potenciano Ilusorio "is likely to be a witness." Defendants Reply Memorandum in Further Support of Motion to Dismiss ("Defendants' Reply Memo") at 7. Mother, father and daughter reside in the Philippines. In addition, several important third party witnesses whose testimony may also be critical to resolving ownership of the Funds include the directors, officers, representatives and major shareholders of the four corporations.[5] *See* Patajo–Kapunan Supp. Decl., ¶ 7; Defendants' Reply Memo at 7–8; Tr. at 6, 12–13. Undoubtedly, the conduct and agreements between and/or among these family members and corporate individuals, all of whom live in the Philippines, are central to the misappropriation allegations in the complaint, and the testimony of these wit-

---

5. The Court does not believe that employees of certain New York banks which received the wire transfers would be as useful as witnesses in connection with the ownership issue. *See* Plaintiff's Opposition Memo at 8.

nesses will be crucial in resolving this dispute.

Regarding the libel claims, the publication or dissemination allegedly causing damage to plaintiff took place in the Philippines. *See* Tr. at 28, 41. As plaintiff simply put it, "[t]he witnesses are in the Philippines" (*id.*) and include the recipients of the libelous letters; the individuals who could testify to the truth contained in the letters; and the individuals with knowledge of the awareness and impression of plaintiff.[6] *See* Plaintiff's Opposition Memo at 9. Defendants have further argued that many of the witnesses relevant to the libel and misappropriation claims will have been offered in the other pending Philippine lawsuits involving the parties before the Court. *See* Defendants' Memo at 7. Accordingly, the Court finds that the location of documents and witnesses weighs heavily in support of dismissal.

The Court finds and plaintiff concedes (*see* Tr. at 38) that all prospective third party witnesses located in the Philippines are beyond the subpoena power of the Court and cannot be compelled to appear at a trial in the United States. The Court further finds that the use of letters rogatory to obtain foreign witnesses' testimony would be a time consuming and prohibitively expensive means of obtaining discovery. While these witnesses could be required to appear in a Philippine court, Philippine law does not provide a procedure for compelling an unwilling Philippine witness to appear in the United States. *See* Patajo–Kapunan Decl., ¶ 14. The Court also recognizes the practical problems of trying this case in the United States. There would be considerable expense, including travel and lodging, in obtaining the attendance even of willing and cooperative third parties. The inability of this Court to compel important live testimony because so many prospective witnesses are beyond the reach of the Court's

compulsory process, the high cost of obtaining the attendance and testimony of witnesses who may be cooperative and the belief that costs would be significantly less if this action were pursued in the Philippines are private interest factors heavily supporting dismissal.

Regarding the enforceability of any future Philippine judgment, the Court presumes that plaintiff may enforce a Philippine judgment in the Philippines against defendants if they have assets there. Plaintiff's concern seems to be what may happen when "that judgment then comes to the United States for execution" (Tr. at 29) because, plaintiff contends, Mr. Bildner will likely attack a Philippine judgment by arguing that the Philippine courts lacked jurisdiction over him. *See* Tr. at 29–31. This concern is addressed by one of the conditions the Court has imposed on dismissal of this action. Moreover, if a foreign judgment has to be enforced in New York where some of the defendants' assets may be located, enforcement may proceed in accordance with the Uniform Foreign Country Money–Judgments Recognition Act codified under New York law to provide for recognition of foreign money judgments. *See* N.Y. C.P.L.R. §§ 5301–5309 (McKinney 1999); *Transunion Corp.*, 811 F.2d at 129. The Court, therefore, finds that this factor is neutral.

In addition, the Court finds that judicial economy would be well served by having this case litigated in the Philippines. At least four other related actions are already pending in the Philippines brought by plaintiff against defendants, including an older Philippine libel action based on the same facts as the New York libel claims. Mrs. Bildner has brought several lawsuits in the Philippines including some against her mother (*see* Patajo–Kapunan Decl., ¶ 7), and plaintiff may be able to consolidate and assert her misappropriation claims in such an action. Moreover, the

---

**6.** Mrs. Bildner does, in fact, reside in the Philippines (*see* Tr. at 9), and while Mr. Bildner appears to be the only libel witness who may not reside in the Philippines, the Court has conditioned the dismissal of this action on his consent to Philippine jurisdiction.

parties have retained Philippine counsel well versed in the factual details relevant to this financial and family dispute. Dismissal of this action would also avoid the duplication of proof involving witnesses and documents; avoid the risk of inconsistent judgments; and conserve valuable judicial resources by not having similar and some identical issues litigated on both sides of the world.

As a final note, the Court concludes that plaintiff has not indicated any persuasive reason why the New York forum is more convenient for her than the Philippines. Absent a demonstration of more compelling grounds, the Court fails to comprehend why plaintiff filed this action in New York when it would be less costly and otherwise more efficient for her (and defendants) to litigate in the Philippines where her other lawsuits are pending against them; where the factual record is likely to be more complete; and where the application of the law to the facts will be more accurate. *See Schertenleib v. Traum,* 589 F.2d 1156,1165 (2d Cir.1978).

On balance, the private interest factors point strongly toward the Philippines as a more convenient forum for this action than the Southern District of New York.

### (B) The Public Interest Factors

The Court further finds that public interest considerations also strongly favor dismissal. These factors include: (1) administrative difficulties relating to court congestion; (2) imposing jury duty on citizens of the forum; (3) having local disputes settled locally; and (4) avoiding problems associated with the application of foreign law. *See Gilbert,* 330 U.S. at 508–09, 67 S.Ct. 839.

Plaintiff contends that the Philippine courts are congested. *See* Declaration of Eduardo de Los Angeles, dated Dec. 23, 1999 ("de Los Angeles Decl."), ¶¶ 3–5. Defendants, on the other hand, dispute the accuracy of plaintiff's statistics (*see* Patajo–Kapunan Supp. Decl., ¶¶ 10–12); argue that the courts in this District suffer from similar congestion (*see* Affidavit of Ashima A. Dayal, sworn to Jan. 18, 2000, ¶¶ 3–5); and suggest that Philippine courts are able to conduct trials within a reasonable period of time after actions are commenced. *See* Patajo–Kapunan Decl., ¶ 13. While some Philippine courts may be congested (*see* de Los Angeles Decl., ¶¶ 3–5), they appear no more congested than the busy courts in this District. This factor, therefore, is neutral at best.

There is also a significant interest in having localized matters decided at home with local law governing the case. Plaintiff claims that there is a "substantial nexus between the litigation and this forum" (*see* Plaintiff's Opposition Memo at 1), arguing that Mrs. Bildner lived in New York when the "agreement" was entered; that Mrs. Bildner's breach was in New York; that monies were wired to New York; that monies were misappropriated in New York; and that two properties were purchased in New York using proceeds from the Funds. *Id.* at 3. The Court, however, concludes that this lawsuit has a most attenuated American connection and that plaintiff's "attempt[ ] to morphose [sic] this case into a dispute that concerns the United States" lacks merit. *See Capital Currency Exch., N.V.,* 155 F.3d at 612.

The focal point of this litigation is the Philippines. Plaintiff and Mrs. Bildner reside there; all of the significant events took place there. The misappropriation claims center on the ownership of the Funds in the Philippines prior to the wire transfers, not any of Mrs. Bildner's subsequent actions in New York. Plaintiff admits that the publication related to the libel occurred in the Philippines; that the damage to plaintiff's reputation occurred in the Philippines; and that virtually all of the witnesses are in the Philippines. Tr. at 28, 41. The connection of this matter to the United States is as tenuous as its connection to the Philippines is strong. *See Murray v. British Broadcasting Corp.,* 81 F.3d 287, 294 (1996). To allow such a

matter to proceed in this District would burden jurors with a case that has, at best, a distant relation to or impact on their community. The interest in protecting jurors from sitting on a case with such remote relevance to their own community weighs heavily in favor of dismissal. *See Alfadda v. Fenn*, 159 F.3d 41, 46 (2d Cir. 1998).

■ The Court further notes that there is a considerable interest in avoiding difficulty with questions of conflicts of law and the application of foreign law. While reluctance to apply foreign law is a valid factor favoring dismissal, the application of foreign law does not, in itself, justify dismissal. *See Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co.*, 145 F.3d 481, 492 (2d Cir.1998). Here, there is a strong probability that Philippine law would apply.

For example, plaintiff has argued in connection with her libel claims that "the substantive law of the Philippines must apply" because "the tort occurred there and/or the Philippines has the most significant relationship to the occurrence and the parties." Plaintiff's Opposition Memo at 14 (citation omitted); Tr. at 41. In support of her libel claims in New York, plaintiff also relies upon the understanding of a "reasonable reader in the Philippines." Plaintiff's Opposition Memo at 16.

Another example is even more illustrative because it involves a specific Philippine statute, the Philippine Blocking Statute ("Statute"). The Statute prohibits the removal from the Philippines of documents and information belonging to Philippine corporations engaged in "the pursuit of national economic development programs of the government of the Philippines and/or engaged in the development, promotion protection and export of Philippine products." *See* Singson Supp. Decl., ¶ 4. Predictably, plaintiff's and defendants' legal experts, the purported authorities on Philippine law, sharply disagree on the relevance and application of the Statute to

the documents and testimony relevant to this litigation.

Defendants argue that the Statute may prevent the production in New York of records from the four Philippine corporations; that a violation of the Statute is punishable by fine and/or imprisonment; and that the Statute creates delays in discovery involving lawsuits outside of the Philippines. *See* Patajo–Kapunan Supp. Decl., ¶ 8; Tr. at 13, 17–18, 47. In contrast, plaintiff maintains that this Statute does not apply to these four corporations and does not prohibit the production of documents in New York because these corporations have never engaged in the types of business covered by the Statute and were formed for private investment purposes, such as investments in real estate and the stock of public corporations, and the Statute does not apply to private investments. *See* Declaration of Erlinda K. Ilusorio, dated Jan. 29, 2000, ¶ 4; Singson Supp. Decl., ¶¶ 4–6; Plaintiff's Surreply Memorandum in Opposition to Motion to Dismiss at 2.

The Court finds that the Statute would, at a minimum, complicate and delay discovery. However, if the action were to continue in this District, and if the Statute were found to be applicable to the four corporations relevant to this action, the Statute could effectively make it impossible to obtain documents and testimony for discovery and trial. *See Transunion Corp.*, 640 F.Supp. at 1217.

This Court lacks familiarity with Philippine law and believes that the uncertain task of addressing questions of Philippine substantive and procedural law is better left with the Philippine courts. In reaching this conclusion, the Court is mindful of Judge Friendly's observation:

> [T]ry as we may to apply the foreign law as it comes to us through the lips of the experts, there is an inevitable hazard that, in those areas, perhaps interstitial but far from inconsequential, where we have no clear guides, our labors, moulded by our own habits of mind as they

necessarily must be, may produce a result whose conformity with that of the foreign court may be greater in theory than it is in fact.

*Conte v. Flota Mercante Del Estado,* 277 F.2d 664, 667 (2d Cir.1960). While the need to apply foreign law is not dispositive, when coupled with distinct expert disagreement and related, pending matters involving the same parties in the Philippines, the Court believes that this factor favors dismissal and that the balance of public interest factors strongly favors dismissal.

### (3) The Conditions of Dismissal

■ The Second Circuit has noted that a forum non conveniens dismissal may be appropriately conditioned on the occurrence of certain events in order to protect the party opposing dismissal. *See Blanco v. Banco Indus. de Venezuela, S.A.,* 997 F.2d 974, 984 (2d Cir.1993); *Calavo Growers of Cal. v. Generali Belgium,* 632 F.2d 963 (2d Cir.1980), *cert. denied,* 449 U.S. 1084, 101 S.Ct. 871, 66 L.Ed.2d 809 (1981). *See also Sussman v. Bank of Israel,* 990 F.2d 71 (2d Cir.1993) (affirming forum non conveniens dismissal conditioned upon the waiver of statute of limitations defenses and the undertaking from Israeli officials that plaintiff would not be detained if he traveled to Israel to initiate litigation); *Borden, Inc. v. Meiji Milk Products Co., Ltd.,* 919 F.2d 822 (2d Cir.1990), *cert. denied,* 500 U.S. 953, 111 S.Ct. 2259, 114 L.Ed.2d 712 (1991) (affirming, as modified, forum non conveniens dismissal conditioned upon foreign forum's acting on injunction application within sixty days). As previously noted, the Court will condition the dismissal of this action on each of the conditions set forth below.

First, this Court has conceptual and practical difficulty with defendants' invocation of the forum non conveniens doctrine when coupled with defendant Albert Bildner's challenges to jurisdiction in the pending Philippine libel action brought by plaintiff against him and his wife. *See Tr.* at 23, 25. While defendants contend before this Court that the Philippines is a more convenient forum and that "both defendants can be sued in the Philippines" (Tr. at 5), Mr. Bildner is simultaneously engaged in motion practice in the Philippine action where he is arguing that the Philippines does not have jurisdiction over him and that he is not amendable to process there.[7] *See* Singson Decl., ¶ 8, Ex. 3; Plaintiff's Opposition Memo at 4–5, n. 2.

■ The doctrine rests on equitable principles designed to achieve a reasonable balance of equities between private parties and public interests. A point of departure to that equilibrium is the premise that if the forum chosen by plaintiff may be inconvenient to defendants, defendants may point to an available alternative more suitable to both, even if not optimal. Embodied in the principle is a dual purpose: to minimize plaintiff's incentive to engage in combat tactics purposefully burdensome to defendants, while at the same time ensuring that plaintiff is not foreclosed altogether from access to justice. Implicit in the rule is that defendants cannot have it both ways. Absent compelling justification, they may not invoke the doctrine to preclude litigation in the court of plaintiff's choice, specifying another place as more suitable to both parties, but then turn around and, because it may be otherwise unsuitable to them, refuse to accept the jurisdiction of the alternative forum they themselves suggested.

The non conveniens principle is not intended to serve as a protective cover for defendants, allowing them to convert inconvenience into injustice, to plead hardship to defendants at the expense of unfairness to plaintiff. To allow defendants

---

7. The Court finds defendants' arguments even more troublesome because they are relying on declarations in support of their motion to have this matter transferred to the Philippines which were sworn to by the same attorney, Lorna Patajo–Kapunan, who filed the motion to dismiss on Mr. Bildner's behalf in the Philippine libel action.

that win-win choice would effectively confer on them a unilateral veto over the prosecution of the case and demolish the equitable grounding of the forum non-conveniens doctrine. Precisely to obviate such potentially unjust results the rule proceeds implicitly on another fundamental: that the application of a rule of law often assumes a failsafe, that here the fallback is that in some circumstances respecting the plaintiff's choice of an inconvenient forum, whatever inherent hardships it may engender, may be preferable to offering no forum at all.

To allow Mr. Bildner to succeed in the tactic he has espoused here would be, to say the least, unfair to plaintiff. Again, Mrs. Bildner resides in and does not contest the jurisdiction of the Philippines (*see* Patajo–Kapunan Supp. Decl., ¶ 4; Tr. at 9–10), and plaintiff has consented to the transfer of this matter if Mr. Bildner consents to jurisdiction in the very forum to which he is advocating a transfer. *See* Tr. at 27–28. Accordingly, the Court conditions dismissal on defendants' consent to jurisdiction of the courts of the Philippines, except as to criminal liability for libel (*see* discussion, *infra*), and the acceptance of the Philippine courts to hear this case. Dismissal is also conditioned upon the consent by defendants to waive all statute of limitations defenses that may have arisen since and that would not have been available at the commencement of this action in New York.

Second, the Court has learned that there is either a criminal offense for libel or a criminal component to civil libel recognized by the Philippine legal system. *See supra* nn. 1, 3; Tr. at 19; 40–43; 50. The criminal facet of libel is all the more ambiguous, in light of the simultaneous and conflicting August 17, 1999 recommendations of assistant city prosecutors in Manila to dismiss the criminal complaint for libel against Mr.

and Mrs. Bildner (*see* Singson Supp. Decl., ¶ 7, Ex. 2) and to recommend that Mr. Bildner should be criminally prosecuted for libel. *Id.* at ¶ 8, Ex. 3; Tr. at 20–22; 26. While defendants have mischaracterized these recommendations as decisions, neither party was able to explain the significance of these conflicting reports during oral argument or since that time. Tr. at 50–51; 56–57. Because the criminal aspect of a Philippine libel claim remains unclear, and since neither Mr. Bildner nor Mrs. Bildner could be subjected to any criminal liability for libel whatever if this case remained in New York, the Court's condition relating to defendants' jurisdictional consent does not apply to any action filed in the Philippines as a consequence of this dismissal that would subject defendants to criminal liability for libel.[8]

Third, the Court, rather than enjoining defendants from transferring, mortgaging or disposing of two particular New York properties (*see* Plaintiff's Opposition Memo at 4), further conditions dismissal on defendants' consent not to attack any final judgment plaintiff may obtain from Philippine courts in an action commenced following dismissal of this action and grounded on the same events and claims, by arguing, upon judgment execution in the United States, that the Philippine courts lacked proper jurisdiction over Mr. or Mrs. Bildner.

Fourth, the Court will allow plaintiff to seek reinstatement of this action without prejudice in the Southern District of New York if defendants do not submit to Philippine jurisdiction, except for criminal liability for libel as set forth above; fail to waive the statute of limitations defenses as described; fail to waive jurisdictional arguments relating to the enforcement of any final Philippine judgment as described; or

**8.** The Court's exception of criminal liability for libel from defendants' jurisdictional consent is designed in connection with any future case that plaintiff may commence flowing from the dismissal of this action and is not

intended to affect any pending Philippine matter involving criminal liability in which a Philippine court may already have asserted jurisdiction over Mr. or Mrs. Bildner, or may be considering whether jurisdiction is proper.

if the Philippine courts decline to accept this matter.

Finally, the Court notes that these conditions are not intended to invite further litigation about them; to encourage any delay; or to place this Court or any other court in this District in a position of monitoring the courts of the Philippines. Once this action is dismissed, the Court will cease to have any further jurisdiction.

### CONCLUSION AND ORDER

The Court concludes that the Philippines is an adequate alternative forum and that the balance of all relevant private and public interest factors strongly supports the conclusion that the transfer of this case to the Philippines for trial and adjudication is most convenient and fair to the parties and would best serve the ends of justice. Accordingly, and for the reasons set forth in the foregoing Decision, it is hereby

**ORDERED** that defendants' motion to dismiss on the ground of forum non conveniens is granted, subject to the following conditions:

(1) Defendants shall waive all jurisdictional defenses, except as to criminal liability for libel, in connection with any new case commenced in the Philippines against defendants as a consequence of this dismissal; and

(2) Defendants shall waive all statute of limitations defenses in the Philippines that may have arisen since and that would not have been available at the commencement of this action in the Southern District of New York; and

(3) Defendants shall waive jurisdictional challenges to any final Philippine judgment that plaintiff may obtain and seek to execute in the United States from an action commenced in the Philippines following dismissal of this action and grounded on the same events and claims; and

(4) Plaintiff may seek leave to reinstate this action in this Court if Mr. or Mrs. Bildner refuses to submit to jurisdiction, except for purposes of criminal liability for libel, as set forth above, in the Philippines; fails to waive the appropriate statute of limitations defenses; fails to consent not to challenge on jurisdictional grounds any final Philippine judgment that may be executed in the United States; or if the courts of the Philippines decline to accept jurisdiction over this matter.

The Clerk of Court is directed to close this case.

**SO ORDERED.**