**CORPORACION TIM, S.A.,
et al., Plaintiffs,**

v.

**Hans SCHUMACHER, Defendant.**

**No. 05 Civ. 08311(VM).**

United States District Court,
S.D. New York.

March 1, 2006.

Anthony L. Tersigni, Richard Neil Gray, Meyers, Tersigni, Feldman & Gray LLP, New York, NY, for Plaintiffs.

Kristen Margaret Keenan, Fulbright & Jaworski, L.L.P., New York, NY, for Defendant.

### DECISION AND ORDER

MARRERO, District Judge.

## I. BACKGROUND

Plaintiffs Corporacion Tim, S.A. ("TIM") and Anna–Caroline Wohr ("Wohr") (to-

gether with TIM, "Plaintiffs") brought this action against defendant Hans Schumacher ("Schumacher") asserting claims of breach of fiduciary duty, conversion of trust funds, malicious interference with contractual agreements, improper accounting, and refusal to deliver title documents. Schumacher moves for dismissal of the action under the doctrine of forum non conveniens, or alternatively pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief can be granted. For the reasons stated below the Court grants the motion on the ground of inconvenient venue.

## II. FACTS

The complaint indicates that TIM is a corporation organized under the laws of the Dominican Republic, and that Wohr is a resident of Germany and the owner of more than 98 percent of the capital stock of TIM. Schumacher is a citizen of New York and a director, officer, managing member and/or partner engaged in administering, from his residence or place of business in New York, the business affairs of a number of affiliated entities located in the Dominican Republic. The entities in question are comprised of the Cabarete Palm Beach Condos ("CPBC"), a sixteen-unit residential condominium complex, and the owners' association, management corporation and rental pool partnership formed by the CPBC members to administer the operations of CPBC. According to the complaint, Schumacher effectively controls the affairs of these entities, including maintaining trust accounts in New York banks that hold the deposits of the members' rental pool income.

Plaintiffs allege that shortly after the CPBC was formed in 1989 Schumacher was entrusted with correcting title defects on behalf of the sixteen unit owners. For this purpose Schumacher was given original title documents for each of the units in 1990 and to this date he has failed to correct the title defects. Moreover, according to Plaintiffs, when Wohr and her husband made inquiries concerning the title defeats and the policies and finances of CPBC and the rental pool, Schumacher allegedly ignored the requests and engaged in a course of action designed to force the Wohrs out of the condominium. Schumacher's alleged wrongful conduct included making an unauthorized payment of TIM funds to the former owner of TIM; causing other members to exclude TIM from the rental pool; directing the local manager to discontinue rentals and hotel services to TIM's unit and to deny other benefits to which all CPBC owners are entitled; obstructing renovation work on TIM's unit in preparation for its rental; and seeking to place a lien on Plaintiffs' unit. Plaintiffs assert that as a result of Schumacher's continued hindrance of their renovation work, they lost their prospective tenant and were forced to pursue legal proceedings before the local State Attorney for an order determining that such interference was unlawful and entitled Plaintiffs to police protection if necessary. Plaintiffs also recite numerous other improper actions Schumacher allegedly took at meetings of the CPBC owners intended to deprive Plaintiffs of their rights as condominium unit owners, including obstructing Wohr from attending the members' meetings, adopting resolutions, limiting discussions and withholding financial reports, all aimed at harming Plaintiffs' interests in the CPBC.

## III. DISCUSSION

Courts employ a two-part test to analyze an invocation of the forum non conveniens doctrine. Initially, the court determines whether there exists an adequate alternative forum. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 506–07, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). If so, the court assesses the appropriateness of liti-

gating the action in the plaintiff's choice of forum, as opposed to the alternative venue, by balancing the private interests of the litigants and the public interest concerns of the court in accordance with the factors articulated by the Supreme Court in *Gilbert. See id.* at 508–09, 67 S.Ct. 839; *see also Ismail v. American Univ. of Beirut,* 246 F.Supp.2d 330 (S.D.N.Y.2003); *VictoriaTea.com Inc. v. Cott Bev. Canada,* 239 F.Supp.2d 377 (S.D.N.Y.2003); *Moscovits v. Magyar Cukor Rt.,* No. 00 Civ. 0031, 2001 WL 767004, at *2 (S.D.N.Y. July 9, 2001), *aff'd,* 34 Fed. Appx. 24 (2d Cir.2002); *Ilusorio v. Ilusorio–Bildner,* 103 F.Supp.2d 672, 673 (S.D.N.Y.2000), *aff'd,* 2001 U.S.App. Lexis 17157 (2d Cir. March 23, 2001). The inquiry probes whether in the interest of justice and all other relevant concerns the action would best be brought in another forum. A threshold question is the degree of deference that should be accorded to the plaintiff's choice of forum. *See Moscovits,* 2001 WL 767004, at *5.

## A. ADEQUATE ALTERNATIVE FORUM

■ The adequate alternative venue requirement of the forum non conveniens doctrine is ordinarily satisfied if (1) the defendants are amenable to service of process there, and (2) the forum permits litigation of the subject matter of the dispute. *See DiRienzo v. Philip Servs. Corp.,* 232 F.3d 49, 57 (2d Cir.2000) (vacated in part on other grounds); *Ilusorio,* 103 F.Supp.2d at 674 (citing *Piper Aircraft v. Reyno,* 454 U.S. 235, 254 n. 22, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)).

The Court notes that Schumacher has consented to personal jurisdiction in the Dominican Republic for the purposes of adjudicating this dispute in that country. (*See* Affidavit of Hans Schumacher, dated November 10, 2005, attached to Notice of Motion, dated November 14, 2005 at ¶ 19)

With regard to the second requirement, generally a court may find a forum inadequate only where there is "a complete absence of due process and an inability of a plaintiff to obtain substantial justice." *Monegasque de Reassurances S.A.M. (Monde Re) v. NAK Naftogaz of Ukraine,* 158 F.Supp.2d 377, 385 (S.D.N.Y.2001), *aff'd,* 311 F.3d 488 (2d Cir.2002); *see also Moscovits,* 2001 WL 767004, at *3. Addressing this standard, Schumacher submitted the affidavit of counsel to the administrator of the CPBC's unit owner's association indicating that the laws of the Dominican Republic provide rights and remedies recognizing the substance of the causes of action they raise in the instant case and that the country's judicial system provides a forum in which Plaintiffs may assert such claims. (*See* Affidavit of Jose Carlos Gonzalez del Rosario, attached to Notice of Motion, dated November 14, 2005, at ¶ 5–6.) Moreover, the Court notes that in the context of forum non conveniens inquiries, other courts have rejected the contention that the Dominican Republic is an inadequate forum for adjudication of private disputes as common those at issue here. *See, e.g., Banco Mercantil, S.A. v. Arencibia,* 927 F.Supp. 565, 568 (D.P.R.1996) (contract dispute involving failure to pay a bank loan); *see also Dominguez v. Pyrgia Shipping Corp.,* No. 98 Civ. 529, 1999 WL 438477, at *4 (E.D.La. June 28, 1999) (personal injury of seaman employed under contract entered into in the Dominican Republic). Finally, Plaintiffs indicate in the complaint that they resorted to legal proceedings before the local State Attorney in the Dominican Republic to assert claims against Schumacher arising from some of the events at issue here. (*See* Compl. ¶ 24.)

As this Court cautioned in *Moscovits,* American courts should be wary of branding other nations' judicial forums as deficient in the substance or procedures that

their laws contain. *See* 2001 WL 767004, at *4. Such denunciations not only run counter to principles of international comity and could retard efforts to reform foreign tribunals, but also risk imposing on our judicial system the burden of serving as courtroom to the world for the adjudication of essentially foreign disputes with only nominal connections with the United States. *See id.; see also Jhirad v. Ferrandina,* 536 F.2d 478, 484–85 (2d Cir. 1976) ("It is not the business of our courts to assume the responsibility for supervising the integrity of the judicial system of another sovereign nation."); *Monegasque,* 158 F.Supp.2d at 384–85.

■ Responding to the adequate alternative forum standard, Plaintiffs submitted an affidavit of a legal expert contending that in litigating their claims in the Dominican Republic Plaintiffs would be deprived of their ability to rely on New York law, and that the Dominican Republic's Commercial Code is very antiquated and provides little, if any, protection as regards the claims Plaintiffs assert. (*See* Affidavit of Nelson Espinal Baez, dated January 4, 2006, attached to Affidavit of Dr. Martin Wohr in Opposition to Motion to Dismiss, dated January 10, 2006, at ¶ 4, 5.) These arguments are unavailing.

The first point begs the question, and overlooks that if the instant action were litigated in this District, under New York choice of law rules, the Court is almost certain to find that because the predominant contacts of the parties and the underlying events occurred in the Dominican Republic, which has the greatest interest in the application of its law under these circumstances involving property and events predominantly in the Dominican Republic, the law of the Dominican Republic law probably would govern litigation of this dispute. *See Van Der Velde v. Philip Morris, Inc.,* No. 02 Civ. 783, 2004 WL 48891, at *8 (S.D.N.Y. January 9, 2004)

("New York's choice of law principles require the Court to apply the law of the jurisdiction with the greatest interest in the litigation.") (citing *Krock v. Lipsay,* 97 F.3d 640, 645 (2d Cir.1996)). Though the Court need not ultimately decide the conflict of laws issue for purposes of this decision, the likely application under New York's choice of law rules of foreign law to this case weighs against retention of the claim. *See Varnelo v. Eastwind Transp.,* No. 02 Civ.2084, 2003 WL 230741, at *27 (S.D.N.Y. February 3, 2003) (noting that "it is well established that a court considering a forum non conveniens motion should not engage in a complex conflict of laws inquiry" and that "the likelihood that foreign law will apply weighs against retention of the action.") (internal citations omitted).

Second, that Dominican Republic law may not contain provisions allowing causes of actions or remedies precisely equivalent to those Plaintiffs' assert in the instant action is not a bar to a finding that an adequate forum exists. *See Moscovits,* 2001 WL 767004 at *3. ("While Moscovits contends that Hungary does not provide specific causes of action for conversion and fraud ... the adequacy of an alternative forum does not depend upon the availability of causes of action identical tho those in the United States.") (citing *Capital Currency Exch. v. National Westminster Bank PLC,* 155 F.3d 603, 610 (2d Cir. 1998)).

Accordingly, the Court finds that the Dominican Republic would provide an adequate forum for the adjudication of this litigation.

**B. DEFERENCE TO PLAINTIFF'S FORUM**

■ Generally, there is a strong presumption in favor of the plaintiff's choice of forum. *See Piper Aircraft,* 454 U.S. at

250, 102 S.Ct. 252; *DiRienzo*, 294 F.3d at 28; *Iragorri v. United Techs.*, 274 F.3d 65, 70–71 (2d Cir.2001). In consequence, defendants have the burden of overcoming this presumption by establishing that the balancing of the *Gilbert* private and public interest factors "tilt strongly in favor" of the alternative forum. *Piper Aircraft*, 454 U.S. at 255–56, 102 S.Ct. 252; *Iragorri*, 274 F.3d at 71–72. Deference to the plaintiff's forum becomes a stronger consideration where the plaintiff is an American citizen, especially in cases in which the underlying claims arose under United States law or seek to enforce or promote significant American policy interests. *See Piper Aircraft*, 454 U.S. at 256, 102 S.Ct. 252 (emphasizing that this rule is not intended to disadvantage foreign plaintiffs but rather reflects a realistic prediction of the ultimate convenience of the forum); *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 103–104 (2d Cir.2000); *DiRienzo*, 294 F.3d at 31.

However, where the circumstances indicate that the parties and events bear no bona fide connection to the United States, or that in relation to the core operative facts in dispute they at best may have only marginal links to the plaintiff's selected forum, that choice of venue is not entitled to special deference, in particular where the claimants are all foreign residents. *See Piper Aircraft*, 454 U.S. at 256, 102 S.Ct. 252; *Iragorri*, 274 F.3d at 72; *VictoriaTea.com, Inc.*, 239 F.Supp.2d at 381. Weighed in the context of this action, these considerations suggest strongly to the Court that forum-shopping reasons may have served as a motivation in Plaintiffs' choice of this District. *See Iragorri*, 274 F.3d at 72 ("[T]he more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons ... the less deference the plaintiff's choice commands and, consequently, the easier it becomes for the defendant to succeed on a forum non conveniens motion by showing

that convenience would be better served by litigating in another country's courts.")

## C. *THE GILBERT FACTORS*

Under the forum non conveniens doctrine, upon finding that an adequate alternative forum does exist and that no special deference to Plaintiff's choice of forum is warranted, the Court then must determine, by balancing the private interests of the litigants with the public interest concerns of the Court, whether adjudication of the action in Plaintiff's chosen forum would be inconvenient and unjust. *See Gilbert*, 330 U.S. at 508–09, 67 S.Ct. 839.

### 1. *The Private Interest Factors*

■ The private interests of the litigants the Court must consider under the *Gilbert* analysis are: (a) the ease of access to evidence; (b) the availability of compulsory process; (c) the cost for cooperative witnesses to attend trial; (d) the enforceability of a judgment; and (e) all other practical matters that might shorten any trial or make it less expensive. *See id.* at 508, 67 S.Ct. 839.

■ In the case at hand, these factors all weigh strongly in favor of litigating the parties' dispute in the Dominican Republic. The complaint details a course of conduct Schumacher allegedly pursued relating to Plaintiffs' property interests in the CPBC, all of which presumptively occurred in the Dominican Republic, including interfering with Plaintiffs' efforts to renovate and rent their condominium unit, excluding them from membership in the rental pool and its benefits, failing to cure title defects and produce original title documents, obstructing their participation at meetings of the condominium owners and denying them adequate financial reports. Insofar as these events occurred in the Dominican Republic, access to the necessary witnesses whose live or deposition testimony

would be necessary, and any related documentary evidence, are likely to be located primarily in the Dominican Republic, and thus beyond the reach of this Court's power to compel production. The costs and inconvenience to those witnesses of participating at trial in this District, even if voluntary, would be substantially higher relative to comparable costs they would incur in the Dominican Republic. In all probability, these circumstance would cause not only financial hardships, but significant delays in preparing the case for trial before this Court.

As against the overwhelming dominant contacts of this action with the Dominican Republic, Plaintiffs point out that Schumacher is a resident of New York; that he manages the affairs of the CPBC and related entities from New York and maintains their accounts in New York banks; that the testimony of some witnesses regarding what occurred CPBC at meetings are detailed in minutes of those meetings, and that some of the witnesses Schumacher identifies are not citizens of the Dominican Republic, including two other directors of the CPBC entities who reside of the United States. The Court finds these arguments unpersuasive.

As Plaintiffs acknowledge, documents relating to bank accounts and other financial reports could be as readily available in proceedings in New York as in the Dominican Republic. But records associated with title to the property at issue, to the extent relevant to some of Plaintiffs' claims and not now available, are certainly located in the Dominican Republic and more readily accessible there, and not in New York. Plaintiffs' argument concerning the testimony of witnesses to events that occurred at meetings of the condominium owners held in the Dominican Republic, and reports concerning Schumacher's alleged interference with Plaintiffs' renovation of their unit, glosses lightly over a potentially

insurmountable obstacle: insofar as introduced to establish what transpired and was said in the meetings in question, more likely than not the content of those documents would be rejected as inadmissible hearsay.

#### 2. *The Public Interest Factors*

The *Gilbert* public interest factors to be weighed by the Court include: (a) administrative difficulties relating to court congestion; (b) imposing jury duty on citizens of the forum; (c) having local disputes settled locally; and (d) avoiding problems associated with the application of foreign law. *See Gilbert,* 330 U.S. at 508–09, 67 S.Ct. 839; *Ilusorio,* 103 F.Supp.2d at 678. These considerations also weigh heavily in favor of dismissal of this action.

First, there is no indication that courts in the Dominican Republic are any more congested than the busy courts in this District. Second, one of the Plaintiffs is a corporation based in the Dominican Republic and the other is an individual owner of that corporation and a foreign citizen, and the physical property and associated operational interests relating to CPBC and its related entities are all located in the Dominican Republic. To this extent, the core events, operative facts and associated property interests in dispute are local to the Dominican Republic. Accordingly, there is a significant interest in having localized matters decided in the local forum in accordance with domestic law governing the case. *See CCS Int'l., Ltd. v. ECI Telesystems, Ltd.,* No. 97 Civ. 4646, 1998 WL 512951, at *10 (S.D.N.Y. Aug.18, 1998) ("[t]here is a legitimate interest in ensuring that disputes with little connection to the district be litigated elsewhere."); *see also Ilusorio,* 103 F.Supp.2d at 678.

Plaintiffs assert various causes of action essentially grounded on the relationship

and corresponding rights, duties and remedies created by their ownership of property interests in the CPBC and the related entities. These claims fundamentally implicate principles of contract and property law of the forum state where the legal relationships were established and where the underlying events that gave rise to the rights of action occurred. Here, it appears that the legal relationship between Plaintiffs and Schumacher connected with their respective interests in the CPBC were created and continue centered in the Dominican Republic. Consequently, the Dominican Republic is the forum with the most significant contacts with and the greatest interest in the adjudication of this case. *See Moscovits,* 2001 WL 767004, at *7. The controlling substantive law governing interpretation of the various agreements pertaining to the CPBC and underlying property interests and the rights and liabilities stemming from those relationships is therefore likely to be that of the Dominican Republic. *See Kalb, Voorhis & Co. v. American Fin. Corp.,* 8 F.3d 130, 132 (2d Cir.1993) (noting that for purposed of conflicts of laws analyses, New York has adopted an "interest analysis," which requires that ... "the law of the jurisdiction having the greatest interest in the litigation ... be applied.") (*quoting Intercontinental Planning, Ltd. v. Daystrom, Inc.,* 24 N.Y.2d 372, 300 N.Y.S.2d 817, 248 N.E.2d 576, 582 (1969)); *AroChem Int'l v. Buirkle,* 968 F.2d 266, 269–270 (2d Cir. 1992). For these reasons, an action should be tried in a forum familiar with the law governing the case. *See Gilbert,* 330 U.S. at 508–09, 67 S.Ct. 839; *see also Monegasque,* 158 F.Supp.2d at 387 ("[A]lthough reluctance to apply foreign law is not dispositive, courts have a legitimate interest in avoiding the difficulty with questions of conflicts of law and the application of foreign law."); *see also Moscovits,* 2001 WL 767004, at *7. Indeed, as already described above, Plaintiffs have already been involved in legal proceedings against Schumacher in the Dominican Republic concerning some of the conduct Plaintiffs cite as grounds for their claims in the instant case. Thus, to some degree, the respective rights and duties of the parties arising under the CPBC agreements may already have been addressed and construed under Dominican Republic law. By contrast, the Court finds no compelling reason why the law and judicial resources of this forum should be applied to resolve this dispute, nor any significant American policy interest that would be promoted or enforced by doing so. *See Piper Aircraft,* 454 U.S. at 256, 102 S.Ct. 252.

The Court concludes that on balance the links of this action with this District are minimal and that the central dispute concerns the Dominican Republic more than the United States. *See Ilusorio,* 103 F.Supp.2d at 678 (noting that the action there at most had an attenuated American connection and that "plaintiff's attempt [ ] to morphose [sic] this case into a dispute that concerns the United States lacks merit.") (*quoting Capital Currency Exch.,* 155 F.3d at 612).

The Court concludes that the balance of the *Gilbert* private and public interest factors weigh heavily in favor of dismissal of this action.

## IV. *ORDER*

For the reasons described above, it is hereby

**ORDERED** that the motion of defendant Hans Schumacher ("Schumacher") to dismiss this action on the grounds of forum non conveniens is GRANTED, provided that in the event plaintiffs in this action commence litigation in the Dominican Republic arising out of the circumstances and claims asserted in this case, Schumacher agrees to accept service of process and not to raise any challenge to the relevant tri-

bunal's exercise of personal jurisdiction over him; and it is further

**ORDERED** that should Schumacher fail to comply with any of the conditions set forth above, plaintiffs may reinstate this action in this Court within thirty days of any documented act of such non-compliance.

The Clerk of Court is directed to close this case.

**SO ORDERED.**