**VICTORIATEA.COM, INC., the Torimiro Corporation, Rachael F. Parray, Plaintiffs,**

v.

**COTT BEVERAGES CANADA a/k/a/ Cott Beverages, Inc., Cott Beverages, Inc. a/k/a/ Cott Beverages USA, Cott Corporation, Universal Flavors–Canada Incorporated, and Universal Foods Corporation a/k/a/ Sensient Technologies Corporation, Defendants.**

No. 02 Civ. 6512.

United States District Court, S.D. New York.

Jan. 7, 2003.

Sam O. Maduegbuna, Madu, Edozie & Madu, P.C., New York, NY, Victor Ekperigin, Maduebuna, Cooper & Ekperigin, New York, NY, for Plaintiffs.

Steven Francis Napolitano, Jay B. Kasner, Skadden, Arps, Slate, Meagher & Flom, L.L.P., New York, NY, Thomas G. Bailey, Jr., John E. Tardera, Winston & Strawn, New York, NY, for Defendants.

### DECISION AND AMENDED ORDER

MARRERO, District Judge.

Plaintiffs VictoriaTea.com, Inc. ("VTI"), the Torimiro Corporation ("Torimiro") and Rachael F. Parray ("Parray") (collectively "Plaintiffs") commenced this action under the Court's diversity jurisdiction against defendants Cott Beverages Canada, Cott Beverages, Inc., Cott Beverages USA, Cott Corporation (collectively "Cott" or the "Cott Defendants") and Universal Flavors–Canada, Inc., Universal Foods

Corporation and Sentient Technologies Corporation (collectively the "Sentient Defendants"). Plaintiffs allege breach of contract and tort claims arising from defective manufacturing and packaging of a beverage that was the subject of an agreement between Torimiro and Cott Beverages Canada. The Cott and Sentient Defendants both moved to dismiss the action on the ground of *forum non conveniens*. By Order dated December 27, 2002, the Court granted the motions and indicated that its reasoning would be set forth in a separate Decision and Order.

## I. FACTS

Torimiro, a Canadian corporation based in Ontario, packages and sells beverages using the brand names "VictoriaTea" and "The Victorian Iced Tea" (collectively "Victoria Tea") to wholesale and retail outlets in Canada, the United States and the Caribbean. Parray, a citizen and resident of Ontario, Canada, is the owner of the Victoria Tea trade names and trade marks. VTI, the licensee of the Victoria Tea trade names and trade marks, asserts that it is a New York corporation with its principal place of business at an address at the 26th Floor of 521 Fifth Avenue, in Manhattan.[1]

Cott, a Canadian corporation based in Ontario, Canada, produces and supplies a brand of various beverages. Cott conducts business in the United States through a wholly-owned subsidiary, Cott Beverages Inc., which is incorporated in Georgia and headquartered in Florida. Sentient Flavors Canada Inc., formerly known as Universal Flavors Canada, Inc., is a Canadian corporation engaged in manufacturing food flavors and other ingredients. Sentient owns Sentient Technologies Corporation (formerly known as Universal Foods Corporation), a United States subsidiary headquartered in Wisconsin.

In July 1999, following discussions in Ontario, Torimiro and Cott Beverages Canada entered into an agreement (the "Agreement") under which Cott undertook to manufacture and package an iced tea product (the "Product") based on a concentrate formula provided by Torimiro. Plaintiffs contend that the Product was to be distributed primarily in the United States market and that all Defendants were so aware. The Agreement was negotiated and executed in Ontario. Torimiro engaged Universal Flavors–Canada to produce the flavor concentrate for the Product. This arrangement was also entered into in Canada. Cott employed the facilities of a division of its United States subsidiary located in Georgia to perform testing of the concentrate.

Plaintiffs contend that because Cott does not produce any powder form of tea concentrate in Canada, the final formulation of the Product was actually developed and approved in the United States by Cott Beverages USA. There is no dispute that Cott manufactured the Product at its facilities in Ontario and beginning in March 2000 shipped it from there to Torimiro's distribution center in Buffalo, New York, and other locations in the United States, Canada and the Caribbean specified by Torimiro.

According to Plaintiffs, beginning in April 2000, within weeks of Cott's initial shipment of the Product, Torimiro began receiving complaints from its customers that containers of the Product were exploding in the customer's warehouses in

---

**1.** Defendants contend that there is no record of VTI being located in that building, that the address indicated is that of a law firm retained by Torimiro in connection with the instant action, that in fact VTI was formed and granted its license by Torimiro in May 2001 and that VTI is actually located in Erie County, New York and Ontario, Canada.

various parts of the United States, Canada and the Caribbean. Torimiro informed Cott of these reports. Cott then retained two Canadian companies, Gelda Scientific and Crown Cork & Seal Canada Inc. to investigate the problem. At Torimiro's request, Cott also had the Product tested by BCN Research Laboratories in Knoxville, Tennessee ("BCN"), which prepared a report in July 2000, indicating that the Product contained a yeast contamination. Torimiro then recalled its inventory of the Product from customers to its distribution center in Buffalo, and alleges that 95 percent of it·was located in the United States. Cott asserts that it reimbursed Torimiro for freight and product costs related to the defective shipments of the Product that Torimiro returned to Cott in Canada.

Plaintiffs claim that on account of these events, they were unable to sell any more of the Product after April 2000. In. January of 2002 Torimiro and Cott sought to negotiate a new packaging agreement. These efforts were unsuccessful. Torimiro, which was then involved in a receivership proceeding, had not paid Cott for certain inventory of the Product and was sued by Cott in Canada under the terms of the Agreement. In that action, which also named VTI, Torimiro asserted as an affirmative defense that Cott owed Torimiro money and that VTI was not a real party to the action.

Plaintiffs commenced the instant litigation in May 2002 in State Supreme Court, New York County, contending that by reason of Defendants' wrongful conduct they lost the value of their trade names and trade marks and their market position. Specifically plaintiffs assert: (1) on behalf of Torimiro, contract claims of breach of contract, breach of implied warranties and breach of implied covenant of good faith, each arising out of alleged failure on the part of the Cott Defendants to perform properly under the terms of the Agreement; (2) negligence claims on behalf of Torimiro based on Defendants' alleged wrongful performance of their underlying obligations to Torimiro; (3) a negligence claim on behalf of Parray and VTI, as the intended beneficiaries of the relationships between Torimiro and the Defendants; (4) a prima facie tort claim; and (5) a distinct request for attorney's fees. Defendants removed the case to this Court and moved to dismiss on the ground of *forum non conveniens*. The Cott Defendants moved alternatively for dismissal for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(B)(2) or for transfer of venue to another district pursuant to 28 U.S.C. § 1404(a).

## II. *DISCUSSION*

Courts employ a two-part test to analyze an invocation of the *forum non conveniens* doctrine. Initially, the court determines whether there exists an adequate alternative forum. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 506–07, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). If so, the Court assesses the appropriateness of litigating the action in the plaintiff's choice of forum, as opposed to the alternative venue, by balancing the private interests of the litigants and the public interest concerns of the court in accordance with the factors articulated by the Supreme Court in *Gilbert*. *See id.* at 508–09, 67 S.Ct. 839; *see also Moscovits v. Magyar Cukor Rt.*, No. 00 Civ. 0031, 2001 WL 767004, at *2 (S.D.N.Y. July 9, 2001), *aff'd*, 34 Fed.Appx. 24 (2d Cir.2002); *Ilusorio v. Ilusorio–Bildner*, 103 F.Supp.2d 672, 673 (S.D.N.Y.2000), *aff'd*, 2001 U.S.App. Lexis 17157 (2d Cir. March 23, 2001). The analysis asks whether in the interest of justice and all other relevant concerns the action would best be brought in another forum. A threshold inquiry is the degree of deference that should be accorded to the plaintiff's choice of forum. *See Moscovits*, 2001

WL 767004, at *5; *see also New Hampshire Ins. Co. v. Sphere Drake Ins. Ltd.*, No. 01 Civ 3226, 2002 WL 1586962 (S.D.N.Y. July 17, 2002), *aff'd in relevant part, vacated in part* by 51 Fed.Appx. 342 (2d Cir.2002).

## A. DEFERENCE TO PLAINTIFF'S FORUM

■ Generally, there is a strong presumption in favor of the plaintiff's choice of forum. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 250, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981); *DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 28 (2d Cir.2002); *Iragorri v. United Technologies Corp.*, 274 F.3d 65, 70–71 (2d Cir.2001). In consequence, defendants have the burden of overcoming this presumption by establishing that the balancing of the *Gilbert* private and public interest factors "tilt strongly in favor" of the alternative forum. *Reyno*, 454 U.S. at 255–56, 102 S.Ct. 252; *Iragorri*, 274 F.3d at 71–72; *R. Maganlal & Co. v. M.G. Chem. Co.*, 942 F.2d 164 (2d Cir. 1991). Deference to plaintiff's forum becomes a stronger consideration where plaintiff is an American citizen, especially in cases in which the underlying claims arose under United States law or seek to enforce or promote significant American policy interests. *See Reyno*, 454 U.S. at 256, 102 S.Ct. 252 (emphasizing that this rule is not intended to disadvantage foreign plaintiffs but rather reflects a realistic prediction of the ultimate convenience of the forum); *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 103–104 (2d Cir. 2000); *DiRienzo*, 294 F.3d at 31; *see also Murray v. British Broadcasting Corp.*, 81 F.3d 287, 290 (2d Cir.1996).

■ But where the local claimant is only nominally American, as in the case of an assignee of a foreign corporation, the "courts have generally refused to give special deference" to plaintiff's choice of forum. *Pain v. United Technologies Corp.*, 637 F.2d 775, 797–98 (D.C.Cir.1980) (finding that the domestic forum choice of a "nominally American plaintiff", defined as subrogees, assignees, or representatives of foreign companies, is generally not given special deference); (citing *United States Merchants' & Shippers' Ins. Co. v. A/S Den Norske Afrika Og Australie Line*, 65 F.2d 392, 394 (2d Cir.1933) and *Fitzgerald v. Westland Marine Corp.*, 369 F.2d 499, 502 (2d Cir.1966); *Iragorri*, 274 F.3d at 72 n. 3) ("if a plaintiff has adopted a U.S. residence for the purpose of having his suit tried in a U.S. Court, the same deference would not apply."); *see also Moscovits*, 2001 WL 767004, at *5.

Here, the core of the dispute before the Court arises in the first instance from the parties' relationship under the Agreement and whatever rights and obligations stem from it. In this connection, the principal parties in interest are Torimiro, the only one of Plaintiffs that was also a party to the Agreement, and presumably Parray, the owner of the Victoria Tea trade names and trade marks. Plaintiffs concede that Torimiro and Parray are both citizens and residents of Canada. The only claimant in this action asserting domestic connections to the United States and this District is VTI. However, rather than comprising one of the principal parties in interest to the underlying relationships and transactions that engendered the action, VTI is but a licensee of Torimiro to some rights to the Victoria Tea trade names and trade marks. Significantly, VTI was formed in May 2000—two years after the date of the Agreement, and nearly one year after all the operative events at issue had occurred—by the principal of Torimiro, who apparently also retains the ownership or control of VTI. While VTI may have been assigned some rights to the Victoria Tea trade names and trademarks, there is no

claim by Plaintiffs that VTI has any registered marks in the United States.[2]

Claiming to have its principal place of business at 521 Fifth Avenue in Manhattan, from which it allegedly coordinates its Northeast United States activities, VTI acknowledges that its principal asset is the license of the Victoria Tea trade names and trade marks, that this property was "no longer economically viable" and was "eventually abandoned"—allegedly on account of Defendants' wrongdoing—and that the location of VTI's place of business is shared space in the law offices of one of Torimiro's attorneys, where VTI does not maintain a separate listing. (Plaintiff's Memorandum of Law in Opposition to the Motion of the Cott Defendants to Dismiss the Complaint Based on *Forum Non Conveniens,* dated November 11, 2002, ("Pl.'s Mem."), at 15.)

Thus, at the time VTI was formed as a licensee of Torimiro in May 2001, the underlying events relating to the production, distribution and explosions of the contaminated Product, and the effects of these circumstances on the marketability of the Product and the Victoria Tea trade names and trade marks, as well as whatever damage the experience may have caused to Torimiro's business, had already occurred at least one year before. Consequently, at all relevant times, under any theory of recovery grounded on either contract or tort, when all the operative facts upon which this action is based took place, there was no entity involved in the relationships, transactions or operative events that established any significant connection of the action to the United States.

Within six months of establishing VTI, Torimiro was in receivership. It is therefore apparent from these circumstances that VTI was never an operational concern with any substantial assets, productions or employees generating any goods or services in the United States. Rather, VTI appears to exist in this forum essentially as a proxy for Torimiro's interests under another name, a paper shell with only nominal connections with this litigation and this District now used by the real parties in interest, two Canadian residents, as a means to bootstrap the prosecution of the instant action in this Court against the two sets of Canadian Defendants. In fact, Plaintiffs acknowledge implicitly that one of their motivating considerations for commencing litigation in New York is their contingency counsel agreement, an arrangement they assert is generally not available in Canada. (Pl.'s Mem. at 16.) Viewed in their totality, these circumstances give rise to a strong inference that forum shopping played a substantial role in Plaintiff's considerations to choose New York as the venue to commence their litigation. *See Iragorri,* 274 F.3d at 74 ("[T]he court must consider a plaintiff's likely motivations in light of all the relevant indications.") Where the connection of the litigation to plaintiff's venue is attenuated and forum-shopping appears to drive the selection, Plaintiff's choice commands less deference. *See id.* at 72.

Based on these facts, the Court concludes that the choice of forum of "a nominally American plaintiff" is not entitled to the high deference ordinarily accorded to plaintiff's venue for the purposes of *forum non conveniens* analysis. *See Pain,* 637

**2.** The Sentinent Defendants point out that research of records they have conducted indicates that, while Torimiro has pending applications for registration of the Victoria Tea trademarks for use on beverages in Canada, none of the three Plaintiffs has any United States registered trademarks to these names or marks or any other trademarks. (Sentinent Defendants' Reply Memorandum of Law In Support of Motion to Dismiss on the Grounds of Forum Non Conveniens, (undated), at 2.)

F.2d at 797–798; *see also Reyno,* 454 U.S. at 255, 102 S.Ct. 252 (noting that the "presumption in favor of plaintiff's forum choice applie[s] with less than maximum force when the plaintiff ... or the real parties in interest are foreign".)

**B.** *ADEQUATE ALTERNATIVE FORUM*

■ The adequate alternative venue requirement of the *forum non conveniens* inquiry is ordinarily satisfied if (1) the defendants are amenable to service of process there, and (2) the forum permits litigation of the subject matter of the dispute. *See Ilusorio,* 103 F.Supp.2d at 674 (citing *Reyno,* 454 U.S. at 254 n. 22, 102 S.Ct. 252); *DiRienzo,* 232 F.3d at 57.

The Court notes that Defendants have all consented to accept service of process in Ontario for the purposes of adjudicating this dispute in Canada.[3]

■ With regard to the second requirement, generally a court may find a forum inadequate only where there is "a complete absence of due process and an inability of a plaintiff to obtain substantial justice." *Monegasque de Reassurances S.A.M. (Monde re) v. NAK Naftogaz of Ukraine,* 158 F.Supp.2d 377, 385 (S.D.N.Y.2001), *aff'd,* 311 F.3d 488 (2d Cir.2002). Applying this standard, the Court notes that in the context of *forum non conveniens* inquiries, other courts in this District have consistently recognized Canada as an adequate forum for adjudication of the types of a claims at issue here. *See, e.g., Sempra Energy Trading Corp. v. Algoma Steel, Inc.,* No. 00 Civ. 9227, 2001 WL 282684, at \*4 (S.D.N.Y. Mar. 22, 2001), *aff'd,* 300 F.3d 242 (2d Cir.2002); *Lana*

*Int'l Ltd. v. Boeing Co.,* No. 93 Civ. 7169, 1995 WL 144152, at \*2 (S.D.N.Y. Mar.30, 1995); *Toronto Stock Exchange v. Quotron Syst. Inc.,* No. 91 Civ. 5045, 1992 WL 116636, at \*2 (S.D.N.Y. May 18, 1992), *aff'd,* 986 F.2d 499 (2d Cir.1992).

■ Plaintiffs assert in conclusory terms that Ontario is not an adequate alternate forum and that they may be unable to obtain substantial justice in Canada by reason of their inability to afford counsel, in contrast to the availability of contingency fee arrangements in this jurisdiction. This consideration has been uniformly rejected as sufficient ground to support a finding that a forum is inadequate. *See, e.g., Murray,* 81 F.3d at 292 (noting that absence of contingency fee arrangements "may not be considered in determining the availability of an alternative forum"); *Coakes v. Arabian Am. Oil. Co.,* 831 F.2d 572, 575–576 (5th Cir.1987) (noting that contingency fee agreements are not permitted in most foreign jurisdictions, and therefore could not serve as a consideration in *forum non conveniens* alternate forum analysis); *see also DeYoung v. Beddome,* 707 F.Supp. 132, 137 (S.D.N.Y.1989).

**C.** *THE GILBERT FACTORS*

■ Under the *forum non conveniens* doctrine, upon a finding that an adequate forum does exist, the Court then must determine, by balancing the private interests of the litigants and the public interest concerns of the court, whether adjudication of the action in plaintiff's chosen forum would be inconvenient and unjust. *See Gilbert,* 330 U.S. at 508–09, 67 S.Ct. 839.

---

**3.** *See* Memorandum of Law in Support of the Cott Defendants' Motion (i) to Dismiss Based on *Forum Non Conveniens* or, in the Alternative, Pursuant to Fed.R.Civ.P. 12(B)(2) and (6) or (ii) to Transfer Venue Pursuant to 28 U.S.C. § 1404(a), dated September 23, 2002, at 8, and Memorandum of Law in Support of Sentient Defendants' Motion to Dismiss, (undated), at 7.

### 1. *The Private Interest Factors*

■ The private interests of the litigants the Court must consider under the *Gilbert* analysis are: (a) the ease of access to evidence; (b) the availability of compulsory process; (c) the cost for cooperative witnesses to attend trial; (d) the enforceability of a judgment; and (e) all other practical matters that might shorten any trial or make it less expensive. *See id.* at 508, 67 S.Ct. 839; *Ilusorio,* 103 F.Supp.2d at 675–76.

Plaintiffs assert various causes of action grounded in contract and tort principles. At bottom, however, the core of their claims and the dispute before the Court rests upon the contractual relationship between Torimiro and the Cott Beverages Canada established under the Agreement. Whatever injuries Plaintiffs allege they suffered by reason of Defendants' wrongdoing necessarily traces back to whether the Cott Defendants properly performed their obligations under the Agreement and to what rights and liabilities the Agreement created as between the Cott Defendants and Torimiro in the event of a breach. Similarly, the causes of action Plaintiffs style as negligence claims against the various Defendants are all integrally related to and could only arise out of the breach of Defendants' underlying contractual duties in question.

On this point, the Court finds that all essential aspects relating to the formulation and performance of the Agreement occurred in Canada. The contract was negotiated and executed there. The manufacturing and shipping of the Product was based in Ontario. Litigation by Cott against Torimiro to enforce the Agreement was instituted in Ontario. To the degree the Cott Defendants may have failed to produce the Product in conformity with the terms of the Agreement, the breach occurred in Canada. The Sentient Defendants' role in the development of the Product also occurred primarily in Canada. Consequently, as to these critical aspects of the litigation, should the matter proceed to trial, the principal parties, witnesses and the bulk of the critical documents are situated in Ontario. Any non-party witnesses who chose not to be deposed or to appear voluntarily at trial would be beyond the reach of the Court's compulsory authority. As the Supreme Court has recognized: "[t]o fix the place of trial at a point where litigants cannot compel personal attendance [of witnesses] and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants." *Gilbert,* 330 U.S. at 511, 67 S.Ct. 839.

In connection with the contract claims, the two principal parties in interest are Torimiro and the Cott Defendants, both of which are Canadian corporations based in Ontario. In addition, insofar as Parray may be entitled to ancillary benefits of Torimiro's rights under the Agreement, she is also a citizen and resident of Canada. And the Sentient Defendants, whatever their role in Plaintiffs' claims, are all located in Canada as well. To this extent, adjudicating this dispute in Canada is likely to be less costly to the principal parties and witnesses and the action to be more efficiently resolved. Should Plaintiffs prevail on the merits of such litigation in Canada, there would be no impediment to the enforceability of a judgment. While VTI invokes rights as a New York entity to pursue litigation in this forum, VTI was not a party to the Agreement and indeed was not even formed until two years later. Thus, for the reasons already discussed above, VTI's choice of forum is not entitled to any special deference in this analysis.

Plaintiffs endeavor to escape the centrality of the Agreement to their claims by reasserting the same events upon which

their contract causes of action are grounded and casting them in terms of negligence claims. But even under tort analysis, Plaintiffs' efforts to create sufficient connection with this forum still fail. As discussed above, under the circumstances of this case, the operative facts and associated evidence underlying whatever tort claims Plaintiffs may properly plead are necessarily integrally dependent upon and could not be disassociated from the events and relationships associated with Plaintiffs' contract claims. Plaintiffs' own pleadings of their negligence causes of action make clear that those claims flow from Torimiro's contractual relationships and related transactions with Defendants, and that Parray and VTI assert their negligence claims as beneficiaries of the relationships between Torimiro and Defendants. Thus, most if not all of the parties, witnesses and documents which form the basis for any of Plaintiffs' tort claims are likely to be the same as those necessary to adjudicate Torimiro's contract causes of action, the controlling transactions and events of which the Court has found to be predominantly grounded in Canada.

Plaintiffs enumerate various connections between this action and the United States, including that: (1) the Product was targeted for the United States market; (2) the testing and reformulation of the Product prior to its manufacturing occurred at Cott's facility in Georgia; (3) Cott shipped some cases of the contaminated Product from Canada to Torimiro's distribution center in Buffalo, New York; (4) many of the customers' reports of explosions of the Product occurred in various parts of the United States, including New York; (5) some investigations of the explosions and analysis of the defective Product occurred in the United States; (6) some of the potential consumers of the contaminated Product were or could have been United States residents; (7) most of the inventory

of defective Product that was recalled was stored in to Torimiro's Buffalo warehouses; (8) Plaintiffs suffered damage to the Product's market position and to the Victoria Tea trade name and trade marks in the United States.

These alleged connections of the action to events that occurred in the United States relate solely to Plaintiffs' negligence claims. By so stressing these pleadings to the exclusion of their contract claims, Plaintiffs attempt to gloss over or ignore the crucial operative facts that depend on the Agreement, and to distort the focus of the litigation, portraying the case as though it presented an ordinary products liability action. But that theory of recovery is not the real nature of this controversy. Here, there is no claim of personal injury to any consumers proximately caused by the explosions of the Product. Nor does the action encompass direct property damage claims of the retailers whose shelves and other inventory may have been harmed by the defective goods. Undoubtedly, in any true products liability case, the location of the alleged explosions, the injuries caused to the claimants, the witnesses and other evidence of each event, take on undisputable centrality and immediacy to the viability of a cause of action founded on any particular occurrence.

Here, however, the harm asserted is instead predominantly economic injury deriving not directly from any particular explosion of the contaminated product, but cumulatively from Defendants' alleged failure to perform their obligations to deliver a marketable Product as contemplated by the parties to the Agreement. Thus, properly viewed, the crux of the litigation should center on the real controversy: injury stemming from Torimiro's failure to realize bargained for expectations by reason of Defendant's alleged

breach of contract, and the scope of Defendants' foreseeable consequential damages to Plaintiffs for loss of potential profits and markets, as well as damages to Plaintiffs' business assets and reputation flowing from Defendants' alleged wrongdoing.

From this perspective, Plaintiffs' argument that a trial in this forum is essential for the convenience of numerous witnesses to the explosions of the Product in various states loses its force and becomes what appears to be a proffer of cumulative evidence. At a trial of the central issues in dispute grounded on Plaintiffs' dominant basis for any recovery, in order to prove that the Product was defective in a manner that caused it to explode, Plaintiffs would not need to produce every witness who saw an explosion of the Product. The facts regarding the contamination and the consequential explosions could also be persuasively established by the reports of the investigations and testing of the defective Product. And while Plaintiffs allege that many of the witnesses are product sellers located in New York, they also assert that reports from witnesses of the explosions originated not only from parts of the United States, but from Canada and the Caribbean as well. Plaintiffs indicate that explosions also occurred at Torimiro's own central warehouse in Buffalo, presumably witnessed by Torimiro's agents, employees or other persons over whom Torimiro could exercise a greater measure of control to produce as witnesses at a trial regardless of the venue of the action.

Hence, for the purposes of establishing that containers of the Product exploded on the shelves of warehouses and stores, witnesses from Canada could appear for a trial in Canada with no more inconvenience than witnesses in New York for a trial in this forum. Similarly, witnesses of the explosions from other jurisdictions could be produced to testify at a trial in Canada with relatively no greater difficulty than for a trial in New York.

Under any theory of Plaintiff's case, however, the most critical witnesses are not the persons who saw the Product explode on the shelves, but those involved in the principal focus of the action: the transactions, formulation and manufacturing that resulted in the defective Product. Defendants have identified numerous specific individuals, all located in Canada, who played critical roles in these aspects of the events. Plaintiffs, by contrast, refer vaguely to unspecified numbers of unidentified witnesses from several parts of the United States, who Plaintiffs assert may be expected to testify at trial. In the Court's review of the record, by far the greater number of critical witnesses are located in Canada, and more readily subject to process and court subpoena there than in this forum. Accordingly, the Court concludes that the *Gilbert* private interest factors strongly support dismissal of this action on *forum non conveniens* grounds.

### 2. The Public Interest Factors

■ The *Gilbert* public interest factors to be weighed by the Court include: (a) administrative difficulties relating to court congestion; (b) imposing jury duty on citizens of the forum; (c) having local disputes settled locally; and (d) avoiding problems associated with the application of foreign law. *See Gilbert*, 330 U.S. at 508–09, 67 S.Ct. 839; *Ilusorio*, 103 F.Supp.2d at 678. These considerations also weigh in favor of dismissal of this action.

First, there is no indication that Canadian courts are any more congested than the busy courts in this District. Second, insofar as all of the primary Defendants—two Ontario-based corporations—and the principal Plaintiffs—a Canadian corporation

and an individual citizen and resident of Canada—are all Canadians, the core dispute is local to Canada. Furthermore, there is a significant interest in having localized matters decided at home in accordance with local law governing the case. *See CCS Int'l., Ltd. v. ECI Telesystems, Ltd.,* No 97 Civ. 4646, 1998 WL 512951, at *10 (S.D.N.Y. Aug.18, 1998) ("[t]here is a legitimate interest in ensuring that disputes with little connection to the district be litigated elsewhere."); *see also Ilusorio,* 103 F.Supp.2d at 678.

Here, the Agreement was negotiated and executed in Canada. Defendants' manufacturing and shipment of the Product were carried out predominantly in Canada and the alleged breach of contract occurred there. Though Plaintiffs place great emphasis on the explosions of the Product that occurred in the United States, their own assertions indicate that the defective Product was distributed and exploded in Canada as well. Consequently, Canada is the forum with the most significant contacts with this case. *See Moscovits,* 2001 WL 767004, at *7. The controlling substantive law governing interpretation of the Agreement and the rights and liabilities stemming from it is therefore likely to be that of Canada.

■ An action should be tried in a forum familiar with the law governing the case. *See Gilbert,* 330 U.S. at 508–09, 67 S.Ct. 839; *see also Monde Re,* 158 F.Supp.2d at 387 ("[A]lthough reluctance to apply foreign law is not dispositive, courts have a legitimate interest in considering the difficulty with questions of conflicts of law and the application of foreign law."); *see also Moscovits,* 2001 WL 767004, at *7. Indeed, as already described above, Cott Beverages Canada and Torimiro have already been involved in litigation in Toronto concerning the terms of the Agreement. Thus, to some extent, the respective contractual rights and duties of the parties arising under the Agreement may have been construed and adjudicated under an application of Canadian law, any judgment of which could create preclusive effect in any subsequent litigation of the same claims or issues.

The Court has considered Plaintiffs' various assertions of this action's connections to the United States, including the Product's potential harms to American consumers. Those purported claims or claimants, however, are not before this Court in the matter actually at issue here. The Court concludes that on balance the links of this action with this District are less consequential and that the central dispute concerns Canada more than the United States. *See Ilusorio,* 103 F.Supp.2d at 678 (noting that the action there had at most an attenuated American connection and that "plaintiff's 'attempt[ ] to morphose [sic] this case into a dispute that concerns the United States' lacks merit.") (quoting *Capital Currency Exch., N.V. v. National Westminster Bank PLC,* 155 F.3d 603, 612 (2d Cir.1998)).

The Court concludes that the balance of the *Gilbert* private and public interest factors weigh heavily in favor of dismissal of this action.

### III. *ORDER*

For the reasons described above, it is hereby

**ORDERED** that the Court's Order of December 27, 2002 herein is amended to incorporate the discussion set forth above; and it is finally;

**ORDERED** that Defendants' motions to dismiss this action on the grounds of *forum non conveniens* are GRANTED.

388

The Clerk of Court is directed to close this case.

SO ORDERED.